UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                    Crim. No. 14-388(1) (PAM)

                  Respondent,

v.                                                         **MEMORANDUM AND ORDER**

Brian Miranda-Ortiz,

                  Petitioner.

This matter is before the Court on Petitioner Brian Miranda-Ortiz's Motion to Vacate under 28 U.S.C. § 2255. For the following reasons, the Motion is denied.

**BACKGROUND**

Petitioner Brian Miranda-Ortiz, who asserts that his true name is Jose Orlando Soriano, was initially charged by criminal Complaint with distribution and conspiracy to distribute a mixture and substance containing methamphetamine. (Docket No. 1.) After Miranda-Ortiz was arrested and detained, the Grand Jury issued an Indictment,[1] charging him with one count of conspiracy to distribute methamphetamine and two counts of distribution of methamphetamine. (Docket No. 16.) In addition, the Indictment contained forfeiture allegations seeking the forfeiture of "any and all property constituting, or derived from, any proceeds obtained directly or indirectly as a result of" the crimes in the Indictment. (Id. at 4.)

---

[1] Petitioner raises several challenges to the Indictment, discussed in more detail below.

Miranda-Ortiz's attorney filed motions for discovery and disclosure, and a motion to suppress all physical evidence and statements Miranda-Ortiz made at the time of his arrest. (Docket No. 45.) The pretrial motions were rendered moot, however, when on April 3, 2015, Miranda-Ortiz pled guilty to the charged conspiracy. (Docket No. 76.) As the parties prepared for sentencing, Miranda-Ortiz had second thoughts about his guilty plea and his counsel filed a motion to withdraw the plea. (Docket No. 93.) Miranda-Ortiz then filed his own pro se motion to withdraw his plea (Docket No. 107), and his counsel sought to withdraw from the case. (Docket No. 115.) The Court appointed new counsel (Docket No. 120), and in November 2015, the Court denied the motions to withdraw the plea. (Docket No. 129.) A week later, Miranda-Ortiz's new counsel also asked for permission to withdraw (Docket No. 130) and the Court appointed two new attorneys to represent him. (Docket Nos. 136, 137.) In the meantime, Miranda-Ortiz, proceeding pro se, sought interlocutory appeal of the denial of his motions to withdraw plea (Docket No. 131), but the Court of Appeals dismissed the appeal for lack of jurisdiction. (Docket No. 143.) The Court thereafter set the matter for a March 21, 2016, sentencing. (Docket No. 144.)

On March 1, Miranda-Ortiz filed yet another pro se motion to withdraw his plea (Docket No. 155), and when that motion was denied, filed an "additional" motion to withdraw his plea. (Docket No. 157.) In addition to the motions to withdraw, Miranda-Ortiz filed a pro se motion invoking his rights under <u>Alleyne</u> (Docket No. 145), a pro se challenge to the Court's subject-matter jurisdiction (Docket No. 158), a pro se "objection" arguing that he did not consent to the sentence for which his attorneys argued because he

did not sign the plea agreement under his proper name (Docket No. 164), a motion for the presiding District Judge to recuse himself (Docket No. 174), and another motion to withdraw his plea. (Docket No. 166.)

The Court denied all pending motions save the Government's motion for a final judgment of forfeiture, and sentenced Miranda-Ortiz to the mandatory minimum 120 months' imprisonment followed by five years of supervised release. (Docket No. 177.) Miranda-Ortiz filed two pro se notices of appeal from this Judgment (Docket Nos. 180, 181), and his attorneys also appealed. (Docket No. 184.) During the pendency of the appeal, Miranda-Ortiz continued to file pro se motions challenging his guilty plea and his conviction. (Docket Nos. 189, 190.)

The Court of Appeals affirmed Miranda-Ortiz's conviction, determining that the Court correctly denied the various motions to withdraw the plea in large part because the record explicitly contradicted Miranda-Ortiz's allegations. (Docket No. 194.) The United States Supreme Court denied certiorari (Docket No. 198), and this Motion to Vacate followed.

The Motion raises 14 separate grounds for relief, all of which contain multiple subparts. Ground One, claiming ineffective assistance of counsel, contains 74 separate instances of allegedly ineffective assistance of counsel. In addition to the Petition, Miranda-Ortiz filed a 31-page memorandum in support of the Petition, an Affidavit, and a Declaration with seven exhibits. During the pendency of the Petition, Miranda-Ortiz has filed numerous Motions for discovery or to clarify Court orders, for declaratory or

summary judgment, and to "notice" things he alleges the Government has done wrong.[2] Respondent filed a response to the § 2255 Motion, and also asked the Court to place Miranda-Ortiz on the restricted filer list because of his numerous filings. Miranda-Ortiz filed a response to the Government's response, another Affidavit, and another Declaration. This matter is fully submitted.

**DISCUSSION**

> Federal prisoners may collaterally attack their convictions or sentences
>
> on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). But a motion under § 2255 is available only in limited circumstances.

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citations omitted). While a federal prisoner may raise claims of ineffective assistance of counsel in a § 2255 motion, other constitutional errors should be, and indeed must be, raised on direct appeal or risk dismissal as procedurally defaulted. See id. at 1076; see also Massaro v. United States, 538 U.S. 500, 509 (2003) (holding that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate

---

[2] All of these Motions are without legal basis and will be denied without further discussion.

proceeding under § 2255"). Here, Miranda-Ortiz's direct appeal claimed error only in the denial of his various motions to withdraw his plea. Thus, it is likely that the other constitutional errors his Motion claims have been procedurally defaulted and are subject to denial on that basis alone.

A.      **Ineffective Assistance of Counsel**

To be entitled to relief based on ineffective assistance of counsel, Miranda-Ortiz must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a "reasonable probability that, but for [his] counsel's . . . errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). The Court must evaluate a lawyer's performance without the benefit of hindsight, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. A criminal defendant is entitled to competent representation, but the Constitution "does not insure that defense counsel will recognize and raise every conceivable" argument. Anderson v. United States, 393 F.3d 749, 754 (8th Cir. 2005) (quotation omitted).

Many of the 74 instances of allegedly ineffective assistance of counsel arise out of Miranda-Ortiz's plea agreement, and thus appear to be directed to the attorney who represented him through the plea proceeding, although Miranda-Ortiz does not specify which attorney's conduct he challenges in any of the 74 subparts of Ground One.

Miranda-Ortiz claims that his counsel did not explain the essential elements of the offense (Mot. to Vacate (Docket No. 203) at Ground One (7)), failed to explain to him that he could plead guilty without a plea agreement (id. (8)), did not object to the constitutional

validity of the plea (id. (6)), did not properly counsel Miranda-Ortiz regarding the waiver of his right to a trial and waiver of other unspecified rights (id. (9), (27)), did not "force" the prosecution to prove the elements of the offense beyond a reasonable doubt (id. (10)), did not challenge Miranda-Ortiz's admissions at the plea hearing as insufficient to support a conviction (id. (11)), did not properly move to withdraw the plea (id. (12), (17), (20), (21), (22), (37)), did not object that there was a lack of factual basis for the plea or that the elements of the offense had not been established and did not adequately explain the elements to Miranda-Ortiz (id. (28), (44), (45), (46), (57)), and generally failed in his duties to Miranda-Ortiz with regard to the plea (id. (13), (14), (15), (31), (32), (36), (41), (52), (53)).

Miranda-Ortiz also contends that his attorney rendered ineffective assistance with regard to the forfeiture, claiming that counsel did not ensure that the amount sought was the correct amount taken from Miranda-Ortiz (id. (26), (33)), misled Miranda-Ortiz by telling him that he would get the money back after sentencing (id. (35)), and misinformed Miranda-Ortiz about the true nature of the charges and forfeiture (id. (34)). He claims that his attorney failed to properly conduct discovery, motion practice, and did not sufficiently research his case (id. (15), (16), (38), (39), (43), (48), (61), (65), (68), (72), (73)). He complains that the attorney failed "to provide written opinion letters" (id. (25)). He asserts that his attorney did not provide an interpreter (id. (24)), failed to notify him of his rights under the Vienna Convention (id. (29)), and failed to raise the Vienna Convention violations to the Court (id. (30)). He also claims that his attorney did not move to quash

6

the Complaint (id. (62)), failed to challenge the sufficiency of the Indictment (id. (64)), and failed to challenge venue (id. (74)).

He believes that his attorney should have pursued DEA agents for alleged violations of 21 U.S.C. § 883 and § 19.6 of the Code of Ethics for government employees (id. (23)). He asserts that the attorney deceived him by telling Miranda-Ortiz that drugs were found in his residence (id. (18)), and by claiming an irretrievably broken relationship when in fact the attorney was incompetent and "defendant had caught him on deceptive misrepresentation" (id. (50)). He claims that the "acts and conduct of trial counsel prejudiced the petitioner and preclude of the right to a fair and impartial trial" (id. (67)).

Several of the allegations appear to be directed at the attorneys appointed to represent Miranda-Ortiz after he attempted to withdraw the plea until his direct appeal. He contends that his attorneys did not go over the presentence investigation report with him and did not object to it as he instructed (id. (40), (66)), and did not review the statement of reasons with him (id. (58)). He claims that they did not pursue all the grounds he wished to pursue on appeal (id. (49)), including that plea hearing did not establish the elements of the offense (id. (47)), alleged Rule 11 violations (id. (42), (63)), "the issue of misapplication of statutes and laws" (id. (69)), Rule 32.2 and due-process errors at the sentencing proceeding (id. (56)), and the denial of a two-point reduction for acceptance of responsibility (id. (70)). He argues that his attorneys did not pursue adequate remedies for the forfeiture of his property (id. (54), (55)).

In addition to these relatively specific allegations, Miranda-Ortiz raises broad allegations regarding the assistance he received from his attorneys. He contends that they

7

failed to act honestly and in good faith (id. (1)), "fraudulent misrepresentation" (id. (2)), "[d]ishonest service" (id. (3)), failed to exercise "reasonable degree of care and skill" (id. (4)), "[f]ailed to obedience the Constitution and laws of the United States" (id. (5)), failed "to challenge the way matter and form of deprivation of fifth amendment, due process and sixth amendment right to trial" (id. (19)), failed to "ensure that the defendant had received the adequate due process requirement in all-stage of the criminal proceeding" (id. (51)), failed to subject the prosecutor's case to "meaningful adversarial testing" (id. (59)), "lacked effective assistance at critical stage of the proceeding" (id. (60)), and that the "attorney's for the petitioner assisted the prosecutor to obtain a plea agreement" (id. (71)).

Miranda-Ortiz's Declaration (Docket No. 206) provides more details regarding his grievances with his attorneys.[3] He asserts that his first attorney tried to coerce him to plead guilty, although he insisted that he wanted to go to trial. (Decl. at 7-8 ¶¶ 5, 8.) He claims that he told the attorney that the search of his business was illegal and that the Government illegally confiscated money from his business. (Id. at 7-8 ¶¶ 6, 7, 10.) He outlines what he believes are the factors making the search illegal, including his allegation that he repeatedly requested to speak to an attorney. (Id. at 9-10 ¶¶ 12-15, 17-19.) He claims that the agents purposefully destroyed security-camera footage to cover up the allegedly illegal and coercive search. (Id. at 11 ¶ 22.) He asserts that the DEA agent misidentified him at the detention hearing but when he asked his attorney to challenge the misidentification, the

---

[3] Miranda-Ortiz's Motion contends that Exhibits D and E to his Declaration also support his ineffective-assistance claims. But there are no Exhibits D or E to his Declaration, nor does the Declaration reference the content of these exhibits.

8

attorney said it would not be possible because the presiding judge would not testify on Miranda-Ortiz's behalf. (Id. at 13 ¶¶ 31-32.) He claims that the attorney did not tell him that there was a transcript of the proceeding available. (Id. at 13 ¶ 32.) He concludes that, because of allegedly "deceptive counsel" he was deprived of his right to a speedy trial, the right to an indictment, and the right to trial.[4] (Id. at 17 ¶ 43.) He complains repeatedly that he does not speak English well, and that his attorney failed to provide an interpreter. (E.g., id. at 18 ¶ 44.) He contends that the attorney promised him that he would receive a 46-month sentence, and he believed that if he was sentenced to more than 46 months he could go to trial. (Id. at 19 ¶¶ 51-52.)

To the extent that Miranda-Ortiz's claims depend on his contention that his attorney failed to adequately represent him in attempting to withdraw his plea agreement, those claims fail. The Eighth Circuit found that Miranda-Ortiz had no basis to withdraw his plea, and thus there can be no ineffective assistance in failing to secure such withdrawal. Moreover, the claims Miranda-Ortiz makes here are belied by the record. At the plea hearing, with an interpreter present, Miranda-Ortiz told the Court that he was satisfied with his lawyer's representation. (Plea Hrg. Tr. (Docket No. 97) at 4, 40.) More importantly, however, although he now insists that he did not admit to the charged conspiracy (Decl. at 20 ¶ 56), the transcript shows that he did admit to taking part in the conspiracy. (Plea Hrg. Tr. at 31.) Contrary to Miranda-Ortiz's belief, there is no exception in the law for someone who offers translation services, if those services are intended to facilitate the sale of illegal

---

[4] He also claims "statute of limitation" but this appears to be related to his contention regarding his speedy-trial rights.

9

drugs. See United States v. McCarthy, 97 F.3d 1562, 1571 (8th Cir. 1996) (noting that gravamen of conspiracy is a participant sharing "the same common purpose or goal of the other conspirators"). Moreover, there was significant evidence that Miranda-Ortiz's role in the charged conspiracy was significant and that his claims of being a mere interpreter were false.

Miranda-Ortiz's multiple claims that he was confused or coerced into pleading guilty are wholly incredible. Rather, a review of the plea hearing transcript shows that the Court, the Assistant United States Attorney, and Miranda-Ortiz's counsel did everything they could to answer any questions Miranda-Ortiz had and to ensure that he understood the proceeding and the consequences of his plea. He has not established any ineffective assistance of counsel arising out of his decision to plead guilty or his later second-guessing of that decision. His claims against his first counsel therefore fail.

Miranda-Ortiz's Declaration raises no actionable ineffective-assistance claims against his second attorney. At most, he contends that he did not want this attorney to represent him and the attorney moved to withdraw. (Decl. at 34 ¶ 4.) Miranda-Ortiz cannot establish that this attorney's assistance was in any way constitutionally ineffective.

Finally, Miranda-Ortiz claims that the assistance of the lawyers who represented him at sentencing and on appeal was ineffective. He contends that he wanted to object to the PSR but the attorneys refused and instead tried to coerce him to participate in another safety-valve proffer with the Government. (Decl. at 38 ¶ 6.) He claims that he told these attorneys that his first attorney did not adequately prepare him for the plea hearing and lied to him, but the new attorneys did nothing. (Id. at 39 ¶¶ 10-11.) He also claims that he

10

directed the attorneys to file another motion to withdraw the plea and they refused. (Id. at 39 ¶ 13.) Although the Motion itself indicates that his attorneys did not raise issues on appeal that Miranda-Ortiz wanted them to raise, the Declaration contains no mention of this allegation and without any specific allegations, the Court cannot evaluate this portion of the claim.

None of Miranda-Ortiz's allegations with respect to his final two attorneys rises to the level of ineffective assistance of counsel. It was not ineffective for his attorneys to refuse to file yet another motion to withdraw Miranda-Ortiz's plea agreement; the Court had already rejected attempts to withdraw the plea. The attorneys did in fact file a thorough sentencing position paper raising objections to the PSR (Docket No. 149) and successfully persuaded the Court to sentence Miranda-Ortiz to the statutory minimum sentence, below the sentence the PSR recommended. Contrary to Miranda-Ortiz's contentions here, he received exemplary assistance from his attorneys in this case.

**B.     Plea Agreement**

In Ground Two, Miranda-Ortiz contends that his plea was constitutionally invalid. As noted, however, the Eighth Circuit rejected Miranda-Ortiz's claims regarding the deficiencies in his plea agreement and plea proceeding. "[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." Davis v. United States, 673 F.3d 849, 852 (8th Cir. 2012) (quotation omitted). Miranda-Ortiz's attempts to challenge his plea therefore fail.

## C. Right to Trial

Ground Three argues that Miranda-Ortiz was denied the right to a fair trial when the Court denied his motions to withdraw his plea. (Mot. at 8.) He also contends that the Court lacked jurisdiction to accept the plea, and that he was not properly indicted. (Id.) These claims are barred by the rule quoted above, and even if not barred, are without any merit whatsoever.

## D. "Outrageous Government Conduct"

In Ground Four, Miranda-Ortiz contends that the Government tampered with documents, "create[ed] an offense and basis of federal jurisdiction," were deceptive and violated the Code of Ethics for government employees, and sought a search warrant in narrative language. (Mot. at 9.) He argues that the "intensive research" he has done "has strongly led him to believe that the conduct of government agents during the course of proceedings in the present case, interfered with and/or obstructed lawful government functions." (Pet'r's Supp. Mem. (Docket No. 204) at 20.) Neither his Motion nor his Memorandum specify the precise conduct with which he takes issue.

Even assuming that there is a cause of action under § 2255 for "outrageous government conduct," Miranda-Ortiz has utterly failed to establish any such conduct here. There was no "creation" of federal jurisdiction; Miranda-Ortiz was charged with a violation of the controlled-substance laws, a matter of unquestioned federal jurisdiction. The Court previously denied Miranda-Ortiz's attempts to suppress evidence seized as a result of a warrant, and there is no requirement that a warrant be phrased in any "factual," as opposed to "narrative," language. And Miranda-Ortiz's fixation with the typographical error in the

case number on the plea agreement is confounding. That error was inadvertent and has no implication for any fundamental right. Ground Four is without merit.

E.  **Vienna Convention**

Miranda-Ortiz next contends that the Government failed to inform him of his rights under the Vienna Convention and did not notify the consulate of his arrest as the Vienna Convention requires. But no court has held that the Vienna Convention imposes requirements that are individually enforceable, much less that the denial of rights under the Convention is a matter of constitutional magnitude. See Sanchez-Llamas v. Oregon, 548 U.S. 331, 347 (2006) (noting that "there is little indication that other parties to the [Vienna] Convention have interpreted [it] to require a judicial remedy in the context of criminal prosecutions"). Section 2255 is reserved for correcting constitutional errors, not errors such as an ostensible denial of rights under the Vienna Convention. This Ground fails.

F.  **Subject-Matter Jurisdiction**

In Ground Six, Miranda-Ortiz once again espouses the claim that the Court lacked subject-matter jurisdiction over the charged offense. The Court has jurisdiction over controlled-substance offenses, and there is no requirement that a federal offense be committed on federal land. Miranda-Ortiz's claim on this point is patently without merit, and this Ground fails.

G.  **Forfeiture**

In the plea agreement, Miranda-Ortiz agreed to the forfeiture of "all property constituting, or derived from proceeds obtained from the offense, and all property used, in any manner or part, to commit or to facilitate the commission of the offense." (Plea

13

(Docket No. 206-3) ¶ 12.) He also "agree[d] that the forfeitures may . . . be complete through administrative, civil, or criminal forfeiture proceedings." (Id.) He now contends that the forfeitures were accomplished without providing him due process, but his plea agreement precludes any such challenge. Moreover, the record shows that the Government used standard criminal and administrative forfeiture procedures to accomplish the forfeitures in this case. And any challenge to a forfeiture must be raised on direct appeal; § 2255 does not provide an avenue to challenge forfeitures. Winkelman v. United States, 494 F. App'x 217, 219-20 (3d Cir. 2012). Miranda-Ortiz has not established any violation of his constitutional rights with respect to the forfeitures.

**H.     Fourth Amendment**

Grounds Eight and Nine raise claims regarding the search of Miranda-Ortiz's business and residence. He claims that he was illegally restrained for hours, was not allowed to speak to an attorney although he repeatedly requested to do so, that the phone tracking the Government used at the inception of its investigation was not supported by a sufficient affidavit of probable cause, and again claims that the affidavit on which the search warrant was based contained "narrative judicial language." (Mot. at 15.)

Miranda-Ortiz waived the filing of pretrial motions in his plea agreement. Thus, although his counsel had filed motions to suppress, these motions were deemed moot and were denied as such. That waiver precludes his claims here. Moreover, even if he did not waive challenges to the search warrant, he has procedurally defaulted on this issue. The failure to raise an issue on direct appeal is a procedural default that bars Miranda-Ortiz from raising the issue in a § 2255 motion. Mathews v. United States, 114 F.3d 112, 113

(8th Cir. 1997). Miranda-Ortiz has no cause for his failure to present his Fourth Amendment arguments to the Eighth Circuit on direct appeal, because he clearly believed at the time of the appeal that the searches were illegal. Indeed, he complains repeatedly that he told his attorney that the searches were illegal. He has procedurally defaulted these claims.

But even if Miranda-Ortiz did not default the claims, they are without merit. Again, there is no prohibition on "narrative judicial language" in a warrant application or affidavit. The Court will not revisit the execution of a search warrant that happened nearly four years ago, and especially in light of Miranda-Ortiz's exaggerations and outright falsehoods in this case, will not accept his version of the execution of the warrants as fact. He has not established a violation of his constitutional rights, and Grounds Eight and Nine fail.

**I.     Contract**

Next, Miranda-Ortiz contends that the plea agreement violated contract law. Again, however, because the Eighth Circuit affirmed the Court's denial of his motions to withdraw, he may not raise challenges to the plea agreement in this Motion. And the record utterly refutes his claims in any event. Ground Ten fails.

**J.     Due Process**

Ground Eleven raises a host of alleged constitutional violations, claiming again that the agents executing the search warrant violated the Constitution and the Code of Ethics for government employees, that Miranda-Ortiz's rights were violated when the Court allowed him to plead guilty and refused to set aside that plea, that Miranda-Ortiz was not arraigned within 48 hours of his arrest, and again that the typographical error in the case

number on his plea agreement has constitutional significance. As discussed above, none of these allegations is borne out by the record, and none has merit.

To the extent that the speedy-arraignment claim is a new claim, it is without merit. Miranda-Ortiz complains about his arrest on November 5, 2014. The record shows that he made an initial appearance on November 6 (Docket No. 3), at which time counsel was appointed. His detention hearing was on November 12, 2014, which was three working days after his initial appearance.[5] (Docket No. 9.) The Grand Jury issued its indictment for Miranda-Ortiz on December 1, 2014 (Docket No. 16), and he was arraigned on that Indictment on December 4. (Docket No. 21.) He has not established any violation of procedural rules or of his constitutional rights.

**K.     Indictment**

Ground Twelve raises multiple challenges to the Indictment. Miranda-Ortiz contends, without any supporting evidence, that the Indictment was not signed by either the Grand Jury foreperson or the Assistant United States Attorney and thus that he was not actually indicted for any offense. But the docket contains a signature page for the Indictment (Docket No. 17-1); it is not publicly available because it reflects the name of the Grand Jury foreperson. Miranda-Ortiz's remaining challenges, such as that the Indictment did not comply with the Fifth Amendment, similarly have no evidentiary support. This Ground is denied.

---

[5] Tuesday, November 11, 2014, was Veteran's Day, a Federal holiday.

**L.     Sentence**

Miranda-Ortiz contends that the sentence he received was illegal because he did not voluntarily plead guilty nor was he properly indicted, the factual basis for the plea was insufficient to establish that he committed the crime charged, the mandatory minimum sentence is erroneous and implicates separation of powers, the Government improperly used counts to which Miranda-Ortiz had not pled guilty to argue for a higher sentence, and the plea was signed by the prosecutor and not by the United States of America. (Mot. at 21.) The Court has previously determined that challenges to the plea agreement are without merit. As noted, the Indictment here was proper. His contention that Congress acted unconstitutionally in setting a mandatory minimum sentence has no legal support. And his argument that the Government impermissibly relied on the two dismissed Counts of the Indictment is without merit—uncharged conduct is routinely taken into consideration in fashioning a sentence. Finally, his contention that the prosecutor's signature on the plea agreement is not the signature of the United States is mystifying and without any merit whatsoever. Ground Thirteen is denied.

**M.     Venue**

Finally, Miranda-Ortiz challenges venue, noting that the location of the crime determines the venue. Here, the Indictment alleges that Miranda-Ortiz engaged in the conspiracy "in the State and District of Minnesota." (Docket No. 1.) Miranda-Ortiz acknowledged that the conspiracy took place in Minnesota in his testimony at the plea hearing. (Plea Hrg. Tr. at 32.) Miranda-Ortiz is engaging in speculation regarding venue,

and speculation is not an appropriate foundation for § 2255 relief. Ground Fourteen is denied.

### N. Evidentiary Hearing

The Court need not hold an evidentiary hearing on Miranda-Ortiz's claims if his allegations, taken as true, entitle him to no relief or if his allegations are contradicted by the record. Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006). Because the record contradicts all of Miranda-Ortiz's claims, the Court declines to hold an evidentiary hearing.

### O. Restricted Filer Status

The Government requests that the Court restrict Miranda-Ortiz from further filings without receiving permission to do so. Although the Court agrees that Miranda-Ortiz's numerous pro se filings are frivolous, the Court is reluctant to restrict his ability to file in the future without first providing him a warning in that regard. Thus, the Court will deny the request without prejudice. Miranda-Ortiz is warned that further frivolous filings, such as the "Notice" filed recently in this matter (Docket No. 246), may result in the Court restricting Miranda-Ortiz's ability to file without first receiving the permission of the Court.

### P. Certificate of Appealability

The Court also declines to issue a certificate of appealability. A defendant who seeks review of an order denying a motion under 28 U.S.C. § 2255 must obtain such a certificate, which will not be granted unless he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(B), (c)(2); accord, e.g., Williams

v. United States, 452 F.3d 1009, 1014 (8th Cir. 2006). He must show the issues are "debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues otherwise "deserve further proceedings." Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997). Miranda-Ortiz does not meet this exacting standard here.

**CONCLUSION**

Miranda-Ortiz is not entitled to relief on any of the claims raised in his Motion to Vacate. Accordingly, **IT IS HEREBY ORDERED that**:

1. Miranda-Ortiz's Motion to Vacate (Docket No. 203) is **DENIED**;

2. Miranda-Ortiz's Motion for Production of Alleged Co-Conspirator Statement (Docket No. 210) is **DENIED**;

3. Miranda-Ortiz's Motion to Produce Subject-Matter Jurisdictional Statement (Docket No. 212) is **DENIED**;

4. Miranda-Ortiz's Motion to Produce and Disclosure of Grand Jury Minutes and Records/Documents (Docket No. 225) is **DENIED**; and

5. Miranda-Ortiz's Motion to Notice the Untimely Filing for Extension of Time (Docket No. 246) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 4, 2019

                                              *s/Paul A. Magnuson*
                                              Paul A. Magnuson
                                              United States District Court Judge